IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FRANCIS TEJANI KUNDRA, | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | No. 3:06-CV-684-B |
| | § | ECF |
| DALLAS COUNTY, TEXAS, | § | |
| DEFENDANT. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Francis Tejani Kundra ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1983 against Dallas County, Texas ("Defendant" or "Dallas County").[1] Plaintiff alleges Defendant violated his civil rights when he was an inmate in the Dallas County Jail (the "Jail"). The District Court referred "Defendants' Motion for Summary Judgment," filed October 9, 2007, to the United States Magistrate Judge. Plaintiff filed a response to the motion on October 29, 2007, and Defendant filed a reply on November 15, 2007.

**Standard of Review**

Summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Only disputes about material facts will preclude the court's granting summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden is on the movant to prove that no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990). If the non-movant bears

---

[1] The only other defendant, Sheriff Lupe Valdez, was dismissed without prejudice from this action on October 25, 2007. Plaintiff's state law negligence claim against Dallas County is still pending.

the burden of proof at trial, the summary judgment movant need not support his motion with evidence negating the non-movant's case. Rather, the movant may satisfy his burden by pointing to the absence of evidence to support the non-movant's case. *Little*, 37 F.3d at 1075. Once the movant meets his burden, the non-movant must show that summary judgement is not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "[A properly supported summary judgment motion] requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. *See* FED. R. CIV. P. 56(e). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' ... by 'conclusory allegations,' ... by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). To determine whether a genuine issue exists for trial, the court must view all of the evidence in the light most favorable to the non-movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant. *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000); *Anderson*, 477 U.S. at 248.

**Failure to Exhaust Administrative Remedies as Required by 42 U.S.C. § 1997(e)(a)**

Defendant contends that Plaintiff's claim should be dismissed without prejudice for failure to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. The terms of 42 U.S.C. § 1997e(a) provide:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). This section applies to all prisoners who file suit for redress for prison

circumstances or occurrences. *Porter v. Nussle*, 534 U.S. 516, 520 (2002). The requirement that a prisoner exhaust his administrative remedies by completing the grievance process before filing suit under 42 U.S.C. § 1983 or other federal law is mandatory. *Booth v. Churner*, 532 U.S. 731, 739 (2001); *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003); *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). Even a prisoner who seeks only money damages is required to comply with this statute. *Booth*, 532 U.S. at 741. Further, a prisoner must exhaust his administrative remedies before he files suit. *Wendell v. Asher*, 162 F.3d 887, 889 (5th Cir. 1998). Nevertheless, the exhaustion requirement imposed by §1997e(a) is not jurisdictional and is subject to the defenses of waiver, estoppel, or equitable tolling. *Underwood v. Wilson*, 151 F.3d 292, 293-95 (5th Cir. 1998). A prison's administrative remedies are not "available" for purposes of the PLRA's exhaustion requirement when filing a grievance is personally unobtainable. *Days v. Johnson*, 322 F.3d 863, 867 (5th Cir. 2003).

Defendant currently provides a two-step procedure for presenting inmate grievances. *Burnett v. Robertson*, 3:01-CV-1284-P, 2001 WL 1577495 (N.D. Tex. Dec. 7, 2001) (adopting the recommendation of the magistrate judge). The first step requires the prisoner to submit a grievance to any staff member. *Id*. After noting the date and time the grievance is received, the staff member must forward the grievance to the on-duty shift supervisor, who will in turn forward it to the Grievance Board for review. *Id*. After review and an investigation, if necessary, the Grievance Board will issue a written decision. *Id*. The inmate has five days after he receives the written decision of the Grievance Board to submit a written appeal to the Inmate Grievance Appeal Board. *Id*. The Appeal Board then reviews all documents submitted in connection with the appeal and issues a decision, which may be reviewed by the Sheriff. *Id*.

Taking Plaintiff's sworn affidavit as true, Plaintiff prepared several written grievances complaining that Defendant was confining him in the cell with another inmate who was sick with T.B. and coughing up blood, but his grievances were ignored and disregarded. (Pl. App. 1.) Plaintiff claims that the guard to whom he submitted one of the grievances tore it up and dropped it in the trash. (Pl. App. 2.) The guard also warned him that if he continued to complain, he would be locked up in isolation. (*Id.*)

Plaintiff is required to exhaust available grievances. Plaintiff swears that he followed the proper grievance procedure by submitting grievances to the staff members. He claims the staff to whom he submitted the grievances either destroyed them or failed to forward them to the on-duty supervisor. A genuine issue of material fact exists with respect to whether Plaintiff was denied access to the grievance procedure with respect to the claims before the Court. If Plaintiff proves his claims about exhaustion, the grievance remedy would be considered personally unobtainable, and hence, unavailable. Plaintiff could not be barred for failing to exhaust available remedies. Disputed issues of material fact exist with respect to exhaustion. Accordingly, Defendant's Motion for Summary Judgment should be denied to the extent that it is based upon Plaintiff's failure to exhaust his administrative remedies.

## Objections to Summary Judgment Evidence

Defendant filed objections to documents contained in Plaintiff's appendix in opposition to Defendant's motion for summary judgment. Plaintiff filed a response to the objections. A reply is not required. Pursuant to FED. R. EVID. 802, Defendant objects to Plaintiff's Appendix Pages 4-50, a report from the United States Department of Justice dated December 8, 2006. The report describes inadequate treatment and management of tuberculosis ("TB") in the Jail and notes five separate

4

instances of inadequate treatment and management of TB. Plaintiff responds that the report is an official government record that is admissible under FED. R. EVID. 803(8) and 801(d). The Court finds that for the reasons stated in Plaintiff's response, the report is admissible under rules 803(8) and 801(d). The Court also overrules Defendant's Rule 703 objection. The reports provide "factual findings resulting from an investigation made pursuant to authority granted by law." *See* FED. RULE EVID. 803(8).

Defendant also objects to the report's admissibility pursuant to Rule 401 on the ground that the instances and conditions described in 2006 are not relevant to the conditions of Plaintiff's confinement in the Jail between June 25, 2004 and September 7, 2004. Plaintiff contends that the report concerns conditions at the jail resulting from the same policies and procedures that were in effect when Plaintiff was confined there. Defendant defends this case based on the assertion that it had a TB screening and management policy in place which was effective to prevent inmates like Plaintiff from contracting TB. On April 3, 2006, the DOJ "notified the County of specific instances of emergent medical concerns that required immediate attention, including the creation and implementation of an effective TB control plan. The County responded on April 10, 2006, stating that there was a TB screening team and program in place at the Jail. However, [the DOJ's] review of the documents indicated a continued lack of appropriate planning to screen and treat inmates, and to contain TB transmission in accordance with general standards of care." (Pl. App, 15, n.3.) For purposes of summary judgment, the Court must take the facts most favorably to Plaintiff. Accordingly, assuming the policy was the same in 2004 when Plaintiff contracted TB as it was in 2006, the DOJ's 2006 report is admissible to rebut Defendant's defense concerning its policy. Defendant's objections to the 2006 report are overruled.

Additionally Plaintiff points out that the same conclusions were reached in an investigation which began in December 2004, shortly after Plaintiff was transferred to TDCJ. Defendant also objects to that report, Plaintiff's Appendix Pages 52-106. The 2004 report also found improper care for and control of tuberculosis in the Jail. The County Medical Director for Performance Improvement, Dr. Skinner, testified in his deposition that the conditions described in the report were the result of ongoing problems that had existed for some time. (Pl. App. Ex. 4; Skinner dep. at 10:13-15:16.)[2] Improper care for and control of tuberculosis in a jail do not suddenly appear overnight. Both reports are relevant to conditions and policies that existed while Plaintiff was confined in the Jail. Therefore, Defendant's objections to documents contained in Plaintiff's appendix are overruled.

Defendant also objects to the Declaration of Plaintiff's medical expert, Debbie A. Bridges, M.D. ("Dr. Bridges"). Defendant's objections do not merit striking the affidavit from the summary judgment record. The Court hereby overrules Defendant's objections to the Declaration of Dr. Bridges.

Plaintiff objects to the affidavit of Walter Skinner, M.D. ("Dr. Skinner"), Defendant's expert witness, because Dr. Skinner's original affidavit was unsigned. He also objects because Defendant submitted a Supplemental Appendix containing a signed copy of the affidavit. Plaintiff contends that the signed affidavit was untimely and filed without leave of Court. The alleged procedural problems with Defendant's submission of its Supplemental Appendix do not merit striking the Supplemental Appendix. Additionally, the Court permitted Plaintiff to file a Supplemental

---

[2] Dr. Skinner's testimony lays the foundation for the admissibility of the reports, and Defendant's objection to lack of foundation are overruled.

Appendix in support of his response to Defendant's summary judgment motion. Plaintiff's objections to Defendant's Supplemental Appendix are overruled.

In sum, both parties' objections to the summary judgment record are overruled.

## The Section 1983 Claims Against Dallas County

Before the Court examines Plaintiff's substantive claims, the Court will briefly recount the facts of the case in the light most favorable to Plaintiff. *See Kinney v. Weaver*, 367 F.3d 337, 348 (5th Cir. 2004) (en banc). Plaintiff was arrested and booked in the Jail on June 25, 2004, and on June 29, 2004, Plaintiff was given a skin test for tuberculosis ("TB"). (Def. App. 305.) Three days later, medical personnel read the test and certified it as negative. (*Id.*) Defendant housed Plaintiff in a cell with an inmate who was coughing up blood and demonstrating other observable signs of active, infectious TB. (Pl. App. 1.) Plaintiff and the sick inmate complained and asked for medical attention to no avail. (Pl App. 1-2.) When Plaintiff complained, a guard told him to "shut up" and that any problems he had were his own fault for breaking the law. The guards also told him that they were busy and had more important things to do than to listen to his crying. (Pl. App. 1-2.) Plaintiff complained to a nurse and showed her blood stains in the cell. The nurse refused to help because his issue was not on her list. (Pl App. 1.)

Plaintiff was transferred to the Texas Department of Criminal Justice (" TDCJ"), where he indicated under his own personal history that he was negative with regard to TB and INH Propylaxis (a drug treatment to prevent development of TB). (*Id.* 011.) X-rays taken in September 2004 and on October 20, 2004, were normal. (*Id.* 002, 077.) On November 8, 2004, more than two months after Plaintiff's transfer from the Jail, Plaintiff reported for a routine "PPD" skin test. (*Id.* 005). Medical personnel read the results on November 10, 2004 and reported a positive result of over 20

mm. (*Id*. 002-003.) Medical personnel at TDCJ reported that Plaintiff had tuberculosis because he now tested positive when he had previously tested negative. (*Id*.) Medical personnel prescribed Isonaizid (300 mg. tablets) and Pyridoxine Hcl (50 mg. tablets) for Plaintiff, to be taken from November 10, 2004, to August 20, 2005, for latent TB. (*Id*.)

Plaintiff's medical records do not indicate that Plaintiff suffered any symptoms that would be consistent with a diagnosis of active TB. (Def. Supp. App. 379.) No sputum culture was ever taken, and his chest x-rays were normal. (*Id*.) Plaintiff was released from TDCJ into federal custody around June 23, 2005. (Def. App. 026, 032.) He reported on June 23, 2005, that he had never had a persistent cough for more than three weeks, had never coughed up blood, and had suffered no breathing problems. (*Id*.) He denied ever having had a persistent fever, night sweats, or weight loss. (*Id*. 184.) On June 24, 2005, he showed no signs or symptoms of active TB. (*Id*. 185.) His lungs were normal. (*Id*. 189.) Plaintiff's medical records while he was in federal custody never showed any signs or symptoms of active TB. (*Id*. 022-025, 206, 209, 218, 220, 254-55, 300.)

Defendant claims that Plaintiff indicated that he had been given the "BCG" vaccine as a child in east Africa and would always test positive for TB, as he had at Parkland Hospital in 2002. However, Plaintiff denies that he ever told anyone he had been given the "BCG" vaccine and denies that anyone ever gave him the "BCG" vaccine. The Parkland Hospital records from 2002 are not available. After reviewing all of Plaintiff's medical records, Walter N. Skinner, M.D., testifying for Defendant, concluded that the positive result of "20 mm" following Plaintiff's "PPD" skin test on November 8, 2004 was likely due to the "BCG" vaccination that Plaintiff received as a child. (Def. Supp. App. 380.) However, Dr. Skinner admitted that a publication of the Diagnostic Standards and Classification of Tuberculosis in Adults and Children of the American Thoracic Society and the

8

Centers for Disease Control and Prevention, adopted by the Council of the Infectious Disease Society of America, gives several reasons for not assuming that a large reaction to tuberculin (such as Plaintiff's over 20 mm. reaction) is due to BCG vaccination. (Pl. Supp. Aff., Exh. 14.) According to the report, "[l]arge or strongly positive skin tests are most probably due to tuberculous infection rather than BCG." (*Id.*)

In his affidavit, Dr. Skinner states that at TDCJ "two medications were prescribed for Kundra, ostensibly as a propyhlactic measure against tuberculosis." (Def. Supp. App. 378.) In his deposition, Dr. Skinner retracted the word prophylactic and admitted that the medications were appropriately prescribed for latent tuberculosis. ( Pl. Supp. Aff. Skinner Dep. at 29-30.) Dr. Skinner's affidavit also states that, "in the absence of any symptoms of tuberculosis--coughing, hemoptysis, fever, shortness of breath, night sweats-- and in the presence of a normal chest X-ray, the assumption made by medical personnel at the Texas Department of Criminal Justice that [Plaintiff] had tuberculosis because he now tested positive when he had previously tested negative was incorrect and resulted in a misdiagnosis of [Plaintiff's] medical condition." (*Id.*) In his deposition, Dr. Skinner modified that statement to retract the "misdiagnosis" conclusion and explain that he did not mean that Plaintiff did not have latent TB or that TDCJ should not have treated him for latent TB.

The opinion of Plaintiff's expert witness, Dr. Bridges, explains that Plaintiff was correctly diagnosed with latent TB (rather than active TB) and that his medical records provide no basis for concluding that the diagnosis of latent TB was incorrect. (Pl. App. 105.) The expert's opinion further states that the summary judgment record contains only one potential cause for Plaintiff's latent TB -- his exposure to TB in the Jail. (Pl. Ap. 105-06.)

9

The Jail had a written TB Management Policy. (Def. App. 39.) However, the summary judgment evidence does not show whether the policy was followed and whether it was effective in screening, controlling, treating, and containing TB transmission in accordance with general standards of care. (Pl. App. 15, n3.) In December 2004, a few months after Plaintiff was transferred to TDCJ, an investigation was conducted into the improper care for and control of TB in the Jail and a report was issued. A second report critical of the care for and control of TB by the Jail was issued December 8, 2006. Several examples of improper care for and control of TB in the Jail are cited in each report.

### **Eighth Amendment Claims**

The terms of 42 U.S.C. § 1983 create a cause of action against every person who, under color of law, subjects, or causes to be subjected, any citizen to the deprivation of rights, privileges, or immunities secured by the United States Constitution and laws. 42 U.S.C. § 1983; *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995). Counties or municipalities, as artificial persons, can be liable for § 1983 violations. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). Defendant contends that this is an episodic acts or omissions case in which Plaintiff must prove that the prison guards and nurse's subjective deliberate indifference and Defendant's objective deliberate indifferent violated his Eight Amendment rights and caused him injury. Plaintiff contends, and this Court agrees, that he is complaining of unconstitutional prison conditions that unnecessarily exposed him to the risk of contracting a deadly communicable disease. He claims that he did, in fact, contract latent TB as a result of the unconstitutional prison conditions. Whether the District Court decides that this is a case of episodic acts or omissions or a case based upon unconstitutional prison conditions, the analysis of the essential elements does not materially change. The test for

a "conditions" case is "functionally equivalent to a deliberate indifference inquiry" whether the inmate is a pretrial detainee or a convicted prisoner.  *See Hare v. City of Corinth*, 74 F.3d 633, 646 (5th Cir.1996).[3]

Under the "deliberate indifference" requirement, a prison official violates the Eighth Amendment only if he or she is subjectively aware of an "excessive risk to inmate health and safety" and does not respond reasonably to that risk.  *Farmer v. Brennan*, 511 U.S. 824, 825 (1994); *see also Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) ("The Eighth Amendment requires prison officials to take reasonable measure to guarantee the safety of inmates in their custody.").  Whether an official had the requisite knowledge is a question of fact, and the fact finder may conclude that the official knew about a substantial risk from the very fact that it was obvious. *Farmer*, 511 U.S. at 826.  A plaintiff's claim regarding disease and injury resulting from his prison housing is evaluated under same constitutional requirements as those that apply to a claim regarding inmate violence.  A plaintiff must produce sufficient evidence for a finder of fact to conclude that the jail's policy with respect to celling the inmates created an unreasonable risk of serious damage to the inmate's health.  *Helling v. McKinney*, 509 U.S. 25, 35 (1993).  The plaintiff must further

---

[3] Defendant argues that "a 'conditions of confinement' claim is only applicable where a pretrial detainee claims that he is being punished without being first convicted."  (Def. Br. at 26.) Defendant's argument is not well taken.  Whether an inmate is a pretrial detainee or a convicted prisoner, the standard of liability for episodic acts or omissions of jail officials is the same. *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir.1999); *Hamilton v. Lyons*, 74 F.3d 99, 104 n. 3 (5th Cir.1996); *Hare*, 74 F.3d at 650.  In *Hare*, the Fifth Circuit held that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs during their confinement, including medical care and protection from harm.  *Id*.

prove that the defendant deliberately disregarded that risk. *Id*. at 36. Determining whether an inmate's conditions of confinement violate the Eight Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that the injury to health will occur. *Id*. The Court must assess whether society considers that risk to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. *Id*. The prisoner must show that the complained-of risk is not one that today's society chooses to tolerate. *Id*.

Taking the summary judgment evidence in the light most favorable to Plaintiff, genuine issues of material fact exist with respect to whether Defendant appropriately screened, treated, or isolated TB-infected inmates who posed a serious risk to Plaintiff's health. Plaintiff's cellmate was coughing up blood and demonstrating other observable signs of active, infectious TB. (Pl. App. 1.) Plaintiff and the sick inmate complained and asked for medical attention for the sick inmate, but their requests were denied. (Pl App. 1-2.) When Plaintiff complained, guards told him to "shut up" and told him that he should have considered that before he broke the law. (*Id*.) The guards said that they were busy and had more important things to do than to listen to his crying. (*Id*..) Plaintiff complained to a nurse and showed her blood stains in the cell. The nurse refused to help because his issue was not on her list. (Pl App. 1.)

Plaintiff tested negative for TB shortly after he was confined in the Jail. Medical personnel at TDCJ diagnosed him with latent TB two months after he was transferred from the Jail and put him on a nine-month treatment schedule for latent TB. (Pl. App. 2-3, 5.) In March 2004, the Texas Commission on Jail Standards cited the Jail for not completing health screening forms on all inmates upon admission into the Intake Processing Area and for failing to screen all employees annually for

12

TB. (Def. App. 362-63.) Prisoner healthcare issues at the Jail were so serious by November 2004 (shortly after Plaintiff's transfer to TDCJ) that the Dallas County Commissioner's Court commissioned a study of medical and mental healthcare in the Jail. (Pl. App. 54-103.) The results, made public in February 2005, criticized the Jail's policy that required inmates to give their requests for medical care ("kites") to the prison guards and recommended a lock-box system that would not be dependent upon the guards. The report recommended, *inter alia*, that symptom screening for TB should be instituted; screening with skin testing should be improved so that it is effective; TB management should be under the direction of a physician knowledgeable and experienced in the treatment of TB; an infection control program should be established; and isolation rooms should be inspected and maintained in working order. (Pl. App. 50.)

In November 2005, the United States Department of Justice notified Dallas County that it intended to investigate conditions at the Jail pursuant to the Civil Rights of Institutionalized Person's Act, 42 U.S.C. § 1997b and issued a report on December 8, 2006. On April 3, 2006, the DOJ "notified the County of specific instances of emergent medical concerns that required immediate attention, including the creation and implementation of an effective TB control plan. The County responded on April 10, 2006, and stated that there was a TB screening team and program in place at the Jail. However, [the DOJ's] review of the documents indicated a continued lack of appropriate planning to screen and treat inmates, and to contain TB transmission in accordance with general standards of care." (Pl. App, 15, n.3.)

The summary judgment record contains evidence backing both Plaintiff's and Defendant's positions in this case. After reviewing the record and the arguments of the parties, the Court concludes that summary judgment on Plaintiff's Eighth Amendment claims is not warranted.

13

Accordingly, Defendant is not entitled to judgment as a matter of law on Plaintiff's Eighth Amendment claims.

## State Law Negligence Claim

### Statute of Limitations

Plaintiff asserts a pendant state law negligence claim based upon the same facts as his Eighth Amendment claims. Defendant asserts that the state law negligence claim is barred by the statute of limitations. Plaintiff contends that the claim relates back to his original complaint which gave Defendant notice of his claims. Defendant does not address the relation-back argument and has not shown that the doctrine of relation-back is not applicable. The Court recommends that Defendant's motion for summary judgment on the ground that the state law negligence claim is barred by the statute of limitations be denied without prejudice to Defendant's raising the statute of limitations as an affirmative defense at trial.

### Eleventh Amendment Immunity

Defendant argues that the Eleventh Amendment bars Plaintiff's state law negligence claim because "the County is a governmental entity entitled to the defense of sovereign immunity as to all claims of negligence by its employees," citing *University of Texas Medical Branch v. York*, 871 S.W.2d 175, 177 (Tex. 1994). Defendant's authority is not applicable to a suit by an inmate against Dallas County. The bar of the Eleventh Amendment to suit in federal courts extends to States and state officials in appropriate circumstances. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977), citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974); *Ford Motor Co. v. Dept. of Treasury*, 323 U.S. 459, 464 (1945). Nevertheless, the bar does not extend to counties and similar municipal corporations. *Mt. Healthy*, 429 U.S. at 280. In a 1985 civil rights suit, the Fifth

Circuit Court of Appeals found abundant authority that had established without question that, as a general rule, Eleventh Amendment immunity does not extend to counties. *Crane v. State of Tex.*, 759 F.2d 412, 417 (5th Cir. 1985). In *Crane*, Dallas County claimed an exception to the general rule, but this circuit's highest authority held that Dallas County is not entitled to Eleventh Amendment immunity. *Id*. In this case, Dallas County does not even claim an exception to the general rule. Clearly, Dallas County is not entitled to invoke Eleventh Amendment immunity to bar Plaintiff's state law negligence claim. The Court recommends that the District Court deny Defendant's motion for summary judgment on Plaintiff's state law negligence claim.

## **Recommendation**

The Court recommends that Defendant's Motion for Summary Judgment be DENIED.

Signed, December 10, 2007.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## **INSTRUCTIONS FOR SERVICE AND**
## **NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).